LISA I. DAMJI (Bar No. 264764)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard , Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:     310.820.8859
Email:           ldamji@bakerlaw.com

KENNETH J. SHEEHAN (Of Counsel)
(pro hac vice application to be filed)
MICHAEL E. ANDERSON (Of Counsel)
(pro hac vice application to be filed)
1050 Connecticut Avenue, N.W., Suite 1100
Washington, DC  20036-5304
Telephone:    202.861.1500
Facsimile:     202.861.1783
Email:           KSheehan@bakerlaw.com
Email:           MEAnderson@bakerlaw.com

Attorneys for Defendant
RAVE LLC

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| VICTOR B. KLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>RAVE LLC,<br><br>    Defendant. | CASE NO.: 13-CV-05786 JD<br><br>[Hon. James Donato, Courtroom 11]<br><br>**DEFENDANT RAVE LLC'S ANSWER TO COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to Federal Rule of Civil Procedure 7(a)(2), Defendant Rave LLC ("Defendant" or "Rave") responds to the numbered paragraphs of the Complaint filed by Plaintiff Victor Kley ("Kley") as follows:

**PARTIES**

1. Rave admits that Mr. Kley resides in Berkeley, California, and that he is, or was, the CEO of General Nanotechnology, LLC ("GN"), which was one of the founders of Rave,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  LLC.  Rave also admits that Kley is the named inventor on several patents.  Rave is without
2  knowledge or information sufficient to respond to the allegations of the third sentence of
3  paragraph 1 related to "Rave Inc.", and therefore denies the same.  Rave admits that the
4  technology it uses was developed, in part, by Victor Kley but denies the remaining allegations of
5  paragraph 1.  The technology used by Rave is drawn from several sources.  For example, Rave's
6  first machines were modified versions of scanning probe microscopy ("SPM") tools Rave
7  obtained from IBM.  Many of Rave's engineers are former members of the team at IBM that
8  developed that original SPM tool.  Rave admits that Kley contributed to the modification of the
9  pre-existing IBM SPM tools to make them operable for mask repair.  Rave continued to modify
10 and improve the known technology, and to create new innovations, without Kley's assistance in
11 order to create its current technology and the technology claimed in U.S. Patent Nos. 7,323,699
12 ("the '699 Patent") and 7,495,240 ("the '240 Patent").  Rave denies the remaining allegations of
13 paragraph 1.
14     2.    Rave admits the allegations of the first sentence of paragraph 2.  Rave further
15 admits that it develops, markets and sells equipment for the semiconductor photomask industry.
16 Rave lacks sufficient information to know what Kley means by the phrase "leader in the
17 industry" and therefore must deny this allegation.  Rave admits that Victor Kley contributed to
18 the development of some of the technology that Rave uses or has used in the past, but Rave
19 denies the remaining allegations of paragraph 2.

## JURISDICTION AND VENUE

21     3.    Rave admits that this action purports to be an action for declaratory judgment of
22 patent inventorship arising under Title 35 of the United States Code, and 28 U.S.C.
23 Sections 2201 and 2202.  Rave admits that this Court has subject matter jurisdiction over this
24 action, but denies Plaintiff's allegations of incorrect inventorship.
25     4.    Rave does not contest that venue is proper in the Northern District of California.
26     5.    Rave admits that it is a California limited liability corporation and that it has
27 conducted business in the State of California.  Rave does not contest that the Court has personal
28 jurisdiction over Rave.

**INTRADISTRICT ASSIGNMENT**

6.     Rave admits that the Complaint generally involves intellectual property. The remaining allegations of this paragraph state a legal conclusion to which no response is required.

**GENERAL ALLEGATIONS**

7.     Rave is without knowledge or information sufficient to respond to the allegations of paragraph 7, and particularly what is meant by the phrases "originally created" and "was registered," and therefore denies the allegations of paragraph 7. Rave admits that articles of organization for Rave LLC were filed on August 21, 1996 by Dan Maelstrom. These articles named Barry Hopkins as the registered agent for service of process for Rave LLC. Rave admits that a purpose of its formation was research and development of equipment for semiconductor mask repair. The first Rave Operating Agreement, dated December 31, 1996, names Barry Hopkins, GN and Technical Instruments San Francisco ("TISF") as founders.

8.     Rave admits that Kley is the named inventor on several U.S. Patents that generally relate to, among other things, SPM technology, but Rave is without knowledge or information sufficient to respond to the remaining allegations of paragraph 8, and therefore denies the same.

9.     Rave admits that Kley is the named inventor of U.S. Patent Application No. 08/786,623 filed on January 21,1997, and that U.S. Patents 8,499,621, 6,337,479 ("the '479 Patent") and 6,353,219 ("the '219 Patent") claim priority to this application. Rave is without knowledge and information sufficient to respond to the remaining allegations of this paragraph, and therefore denies the same. In particular, Rave notes that GN purported to assign at least the '219 and '479 Patents to Terraspan LLC.

10.    Rave admits the allegations of paragraph 10 of the Complaint.

11.    Rave is without information sufficient to respond to the allegations of the first sentence of paragraph 11, in particular what plaintiff means by "based on and/or derived from, in material part" and "had full access and discussed at length with KLEY", and therefore denies the same. In particular, it is unclear what Kley claims he discussed with the named inventors. As discussed in response to paragraph 1, the technology used by Rave was created from several

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

sources. For example, Rave's first machines were modified versions of SPM tools Rave obtained from IBM. Many of Rave's engineers are former members of the team at IBM that developed that original SPM tool. Rave admits that Kley contributed to the modification of the pre-existing IBM SPM tools to make them operable for mask repair. Rave continued to modify and improve the known technology, and to create new innovations, without Kley's assistance in order to create its current technology and the technology claimed in the '240 and '699 Patents. Rave admits that Rave retained GN, for limited consulting work, but denies that Kley performed any consulting work for Rave related to positioning chemical reactants on a surface and directing energy to the reactant. Rave is without knowledge sufficient to understand what Kley means by the phase, "[h]e also collaborated with Rave personnel on different ways of implementing and improving upon the teachings of KLEY's '97 Spec and the KLEY patents" and therefore denies the same. Rave admits that Kley had conversations with the named inventors, but denies that Kley collaborated with or otherwise discussed positioning chemical reactants on a surface and directing energy to the reactant with any of the named inventors of the '240 and '699 Patents prior to the invention of those patents. Rave denies the remaining allegations of paragraph 11.

12. Rave admits that it filed and prosecuted applications resulting in the issuance of the '240 and '699 Patents, and that Kley is not named as an inventor on either of those patents. Rave denies the remaining allegations of the first sentence of paragraph 12 of the Complaint. Rave denies that Kley was unaware of the prosecution of the applications that led to the issuance of the '240 and '699 Patents. Kley raised these same inventorship claims in June of 2007 while the applications that resulted in the '240 and '699 Patents were still pending at the Patent and Trademark Office. Specifically, Kley claimed in 2007 that the applications that ultimately became the '240 and '699 Patents were based off of the '219 and '479 Patents, on which he was the named inventor. Rave promptly disclosed these patents to the Patent and Trademark Office, which allowed and issued the '240 and '699 Patents over Kley's prior patents. Rave is without knowledge or information sufficient to respond to the remaining allegations of the last sentence of paragraph 12 and therefore denies the same.

13. Rave denies the allegations of paragraph 13, and specifically denies that Kley contributed to the inventions of the '240 and '699 Patents.

14. Rave admits that it has denied Mr. Kley's requests to change the named inventors on the patents because Mr. Kley did not contribute to the invention of the '240 or '699 Patents. Rave denies the remaining allegations of paragraph 14.

## COUNT I

### (Declaratory Judgment of Inventorship)

15. Rave incorporates by references it responses to paragraphs 1-14 as though the same were set forth fully herein.

16. Rave admits that Kley has created a controversy regarding the inventorship of the '699 and '240 Patents, but denies Kley's claims that that the inventorship of the '240 and '699 Patents is incorrect.

17. Rave admits that Kley seeks a declaration that he is an inventor of one of more claims of the '699 and '240 Patents, but denies that Kley contributed to the invention of the '240 and '699 Patents and denies that Kley is entitled to the declaration he seeks.

18. Rave admits that Kley seeks a declaration allegedly "correcting" inventorship of the '699 and '240 Patents, but denies Kley's claims and denies he is entitled to the declaration he seeks.

19. With respect to any allegations in Plaintiff's Complaint not specifically admitted above, Rave denies the same.

## AFFIRMATIVE DEFENSES

As its separate affirmative defenses to Plaintiff's claims and allegations, Rave alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

1. The Complaint fails to state a claim upon which relief can be granted. It is unsigned by counsel as required by Fed. R. Civ. P. 11.

**SECOND AFFIRMATIVE DEFENSE**

2.     The '240 and '699 Patents each properly identify the proper inventors of the subject matter of the respective patents, and Kley cannot demonstrate otherwise by clear and convincing evidence.

**THIRD AFFIRMATIVE DEFENSE**

3.     Kley's claims are barred under the doctrines of waiver, equitable estoppel and/or laches.  Kley raised these same inventorship claims in June of 2007 while the patents were still being prosecuted.  In 2007, Kley claimed that the applications that ultimately became the '240 and '699 Patents were based on the '219 and '479 Patents, on which Kley was the named inventor.

4.     Rave reviewed Kley's inventorship claims and promptly disclosed the patents identified by Kley to the Patent and Trademark Office (the "PTO").  The PTO allowed and issued the '240 and '699 Patents over Kley's prior patents.

5.     Rave informed Kley that that Kley's inventorship claims were without merit in 2007.

6.     After these actions, Kley did not pursue his claims of inventorship for several years. Kley only resurrected his long-dead inventorship claims after Terraspan LLC, a company controlled by Kley's sibling, moved to voluntarily dismiss the lawsuit that Terraspan had filed against Rave for the alleged infringement of patents purportedly invented by Kley.

**FOURTH AFFIRMATIVE DEFENSE**

7.     Kley's claims are barred by estoppel and/or acquiescence.

**FIFTH AFFIRMATIVE DEFENSE**

8.     Kley's claims are barred by Kley's unclean hands.  The present suit is one of four separate lawsuits and numerous other actions taken by Kley, either directly or through companies he controls or has a substantial interest in, for the purposes of harassing and extracting money from Rave.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### FURTHER AFFIRMATIVE DEFENSES

9. Rave hereby gives notice that it intends to rely upon such other and further affirmative defenses as may become available during discovery proceedings in this case, and Rave hereby reserves its right to amend its Answer to assert such affirmative defenses.

### PRAYER FOR RELIEF

WHEREFORE, Rave prays for judgment against Kley as follows:

1. That Kley take nothing by his Complaint, and that the Complaint be dismissed with prejudice;

2. That the Court declare and enter judgment that Kley is not a co-inventor of the '240 and '699 Patents;

3. That the Court declare and enter judgment that Kley has not shown inventorship of the '240 and '699 Patents is improper;

4. That Rave be awarded its costs of suit, including reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

5. That the Court award Rave such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Rave LLC, pursuant to Federal Rule of Civil Procedure 38, hereby demands a trial by jury on all issues so triable.


Dated:   June 5, 2014            Respectfully submitted,

                                 BAKER & HOSTETLER LLP


                                 By:   /s/ Lisa I. Damji
                                       Lisa I. Damji

                                 Attorneys for Defendant
                                 RAVE LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 5, 2014, a true and accurate copy of **DEFENDANT RAVE LLC'S ANSWER TO COMPLAINT; DEMAND FOR JURY TRIAL** was electronically filed with the Court to be served by operation of the Court's electronic filing system.

Dated: June 5. 2014        BAKER & HOSTETLER LLP

/s/ Lisa I. Damji
Lisa I. Damji

Attorneys for Defendant
RAVE, LLC

- 8 -